FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2007 OCT 10 PM 4:50
CLERK
SO. DIST OF GA.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | |
|---|---|
| DANNY WILLIAMS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CV607-045 |
| BILLY BROWN, WAYNE JOHNSON, AND BILLY TOMPKINS, | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Danny Williams filed this 42 U.S.C. § 1983 action on July 17, 2007. Doc. 1. On July 27, 2007, this Court granted Williams leave to proceed *in forma pauperis* on the condition that he return a Prisoner Trust Account Statement form and a Consent to Collection of Fees from Trust Account form within thirty days of that order. Doc. 3. He returned both forms before the deadline; therefore, the case is ready to proceed.

## I. LEGAL PRINCIPLES

Congress set forth the procedures for handling civil actions filed by prisoners or other detainees in the Prison Litigation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, 110 Stat. 1321—71. The PLRA authorizes federal courts to "dismiss any action brought with respect to prison conditions under [42 U.S.C. § 1983] . . . if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(1). In addition, the PLRA requires federal courts to conduct an early screening of all prisoner suits against government entities or officials to identify claims subject to immediate dismissal. 28 U.S.C. § 1915A. The Court therefore will examine Williams' complaint to determine whether he has stated a claim for relief under 42 U.S.C. § 1983.

## II. ANALYSIS

### A. Denial of Access to the Courts

The first allegation in Williams' complaint is that defendant Billy Brown, a deputy warden at Smith State Prison in Glennville, Ga.,

deprived him of his right to access the courts. Doc. 1 at 5. Williams alleges that he had stored in his personal prison locker some "legal materials" that related to four civil cases he has already filed and one civil case he was "contemplating" filing. Id. A dispute between Williams and Brown arose when Brown told Williams that his personal locker contained too many items. Apparently, prison policy permits inmates to store otherwise permissible items in their personal lockers, but the locker cannot be packed with so many items that it will not close properly. Id. Brown advised Williams on numerous occasions to remove some items from the locker, but Williams ignored that counsel. Id.

In early September 2005, Brown issued a "final warning" to Williams, informing him that if he did not discard some of the materials on his own initiative, prison officials would search the locker, inventory the items contained therein, and "make a decision [on] what has to be disposed of." Id. The warning also included a reminder to Williams that he would face disciplinary action if he did not comply. Id. In response to the Brown's "final warning," Williams disposed of at least some of the legal materials in his locker, but his complaint does not specify the type or quantity of materials he actually threw away. See id.

On September 7, 2005, Williams filed a grievance with prison officials to protest Brown's "final warning." Doc. 1 at 5. The grievance alleged that Williams was in full compliance with the prison's policies on storing items in personal lockers. Id. That initial grievance and Williams' appeal of that grievance were both denied. Id. at 3-4.

Williams now contends that Brown's actions deprived him of his right to access the courts because the items he discarded related to current or anticipated litigation. See Bounds v. Smith, 430 U.S. 817, 821-22 (1977) (prisoners enjoy a constitutional right to "adequate, effective, and meaningful" access to the courts). To prevail on a claim that his right of access to the courts was unconstitutionally denied or abridged, Williams must show that Brown's interference caused significant harm or prejudice. See Sowell v. Vose, 941 F.2d 32 (1st Cir. 1991) (where a prisoner's access to legal materials is restricted in some manner, but not absolutely blocked, he must demonstrate actual harm as a prerequisite to recovery); Chandler v. Baird, 926 F.2d 1057, 1062 (11th Cir. 1991) (plaintiff must show injury or prejudice in cases involving minor restrictions on access to legal materials). Interference that does not result in any injury is not of constitutional significance. Id.

Because he has not pleaded facts indicating that he suffered an actual injury resulting from Brown's actions, Williams has failed to state a cognizable claim for the violation of his right to access the courts. Williams' complaint demonstrates only that Brown interfered with his right to store his materials in his personal locker. Brown did not discard any of the materials. Williams did that himself after receiving Brown's warning. Moreover, Williams does not allege that Brown threatened to throw away any *legal* materials. Instead, Williams alleges only that Brown threatened to inventory the materials to determine what could be discarded. Doc. 1 at 5.

Although Williams may not have been able to store the items where he wanted to store them, he has not articulated any constitutional harm he suffered by not being able to keep his materials in his personal locker. See Bass v. Singletary, 143 F.3d 1442, 1445 (11th Cir. 1998) ("The injury . . . the inmate must demonstrate is an injury to the right asserted . . . . Thus, the prison officials' actions which allegedly infringed an inmates' right of access to the courts must have frustrated or impeded the inmate's efforts to pursue a nonfrivolous legal claim.").

Although Williams claims the removal of the materials "hindered, impeded, and denied [his] access to the courts," doc. 1 at 5, his complaint lists no facts to demonstrate how the removal damaged his pending and anticipated civil suits. His complaint fails to identify the nature or content of any of the materials, does not describe how those materials related to his cases, and makes no allegation that the materials were unavailable from any other source. Thus, Williams' bare allegation that removal of the materials effected a deprivation of his constitutional rights does not state a cognizable claim for relief under § 1983. See Bass, 143 F.3d at 1445; cf. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). This claim should be dismissed for failure to state a claim.

B.  **Retaliatory Transfer**

According to Williams, the dispute with Brown was not the only constitutional deprivation the defendants inflicted upon him. He alleges that he had requested, and was in fact approved for, a transfer to a prison closer to his family. Doc. 1 at 5. He further alleges that the defendants intentionally undermined that request. Id. As a result of the

defendants' intervention, Williams was transferred to Ware State Prison on September 22, 2005. Id. Instead of moving him closer to his family, that transfer placed Williams twice as far away from his family than he had been at Smith State Prison. Id.

Williams alleges that the transfer to Ware State Prison was the defendants' mechanism for retaliating against him for filing a grievance against Brown over the materials incident and for threatening to expose the prison's cover-up of a scam in which inmates were creating and using falsified court documents to obtain sentence reductions.[1] Id. Williams contends that such retaliation violated his rights to procedural due process. Id.

Although an inmate has no constitutionally protected liberty interest against being transferred to a particular prison, Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976), any time that an official transfers, or otherwise punishes, a prisoner in retaliation for exercising his right to file grievances against prison officials, that official violates the prisoner's First Amendment rights and his right of access to the courts. Bridges v.

---

[1] Williams also asserts that the transfer violated his right to testify on the government's behalf at the double homicide trial of another inmate. But the right to call witnesses belongs to the parties at trial, not the witnesses themselves. Therefore, that claim lacks merit.

7

Russell, 757 F.2d 1155, 1157 (11th Cir. 1985); see also Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989). While the Court is skeptical that Williams can produce any evidence supporting his claim, he has nevertheless stated a colorable § 1983 claim for retaliatory transfer because his complaint alleges that he was transferred to Ware State Prison as punishment for filing a grievance against defendant Brown. Accordingly, the Court recommends that a copy of plaintiff's complaint be served on the defendants with respect to this claim.

### C. Deliberate Indifference to Williams' Serious Medical Needs

Williams' next claim is that the defendants used the transfer as a vehicle to ignore his serious health needs. Doc. 1 at 5. He asserts that in August 2005 the utilization management office of the Georgia Department of Corrections approved his request for surgery to repair a herniated disc in his back. Id. But Williams did not undergo back surgery before he was transferred on September 22, 2005. Id. Williams contends that the defendants neglected his request for the surgery and that his transfer amounted to deliberate indifference to his serious medical needs. Id.

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that the Eighth Amendment's proscription against cruel and unusual punishment prevents prison personnel from subjecting an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. The Eleventh Circuit has held that a delay in access to medical care that is "tantamount to 'unnecessary and wanton infliction of pain,'" may constitute deliberate indifference to a prisoner's serious medical needs. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam) (quoting Estelle, 429 U.S. at 104). But the Eleventh Circuit has also stated that some delay in rendering medical care may be tolerable, depending on the nature of the medical need and the reason for the delay. Harris v. Coweta County, 21 F.3d 388, 393—94 (11th Cir. 1994).

The Court finds that Williams has not stated a cognizable Eighth Amendment claim for deliberate indifference to his medical needs. Even assuming that a herniated disc constitutes a "serious medical need," none of the facts in Williams' complaint demonstrate that the defendants were deliberately indifferent to that need. Although Williams says he was approved for back surgery while he was at Glenville State Prison, he

does not assert that his surgery had been scheduled for a specific date or that any of the defendants knew about his need for the surgery. See Farmer v. Brennan, 511 U.S. 825, 837 (1994) (prison official cannot be liable under Eighth Amendment unless he both "knows of and disregards an excessive risk to inmate health or safety"). Furthermore, nothing in the complaint suggests that the procedure is unavailable at Ware State Prison. Therefore, Williams' Eighth Amendment claim for denial of necessary medical treatment should be **DISMISSED**.

D.  **Williams' Remaining Claims**

Each of Williams' remaining claims stems from comments allegedly made by the defendants to his wife in retaliation for him "exercising his rights." More specifically, Williams claims that on September 26, 2007, when his wife asked defendant Johnson the reason why her husband was transferred to Ware State Prison, Johnson told her that Williams had become "too familiar with a staff member." Id. Then, on September 27, 2005, defendant Tompkins told Williams' wife that her husband was transferred for getting "involved in something he shouldn't have." Id.

According to Williams, the "natural inference" from the defendants' comments is that he was transferred for attempting to

cultivate a romantic relationship with a female guard at Glenville State Prison. Id. Williams asserts that the defendants' alleged defamatory comments had their desired effect, harming his marriage and his reputation. Id. Consequently, Williams contends that the comments constitute libel and slander under Georgia state law. He therefore requests that the Court exercise supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367.

The Court accepts Williams' invitation to exercise supplemental jurisdiction and finds that he has failed to state a cognizable claim for libel or slander under Georgia law. To state a valid claim of libel, O.C.G.A. § 51-5-1(a) requires that the defendant make "a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." Here, the defendants' statements were neither expressed in one of the above-listed mediums nor were they expose him to "*public* hatred, contempt, or ridicule."

Similarly, Georgia law permits a plaintiff to recover for slander only where a defendant's statements constituted slander per se or caused specific damages. Of the categories of slander per se set forth in

O.C.G.A. § 51-5-4, the only category bearing any resemblance here is § 51-5-4(a)(2), which provides that special damages need not be shown if the defendant made comments "[c]harging a person . . . with being guilty of some debasing act which may exclude him from society." The Court finds that the defendants' comments are too vague to constitute slander per se. Likewise, because Williams' complaint neither alleges nor contemplates any special damages that he suffered, he has not otherwise stated a cognizable claim for slander under Georgia law. Therefore, Williams' state-law claims should be **DISMISSED**.

Williams' final contention is that not only did the defendants make false statements to his wife about the reason for his transfer, but that they also placed information in his prisoner file that repeated the same false justification for his transfer. Because of that information, he is ineligible to be transferred to a minimum security facility. Therefore, he now contends that the insertion of the allegedly false material into his prison file violated his right to due process because it deprived him of the ability to qualify for minimum-security status. However, in Meachum v. Fano, 427 U.S. 215, 225 (1976), the Supreme Court held that the transfer of state prisoners from medium to maximum security prisons did not

infringe or implicate a "liberty" interest of prisoners within meaning of due process clause. By logical extension, the holding of <u>Meachum</u> also precludes a due process claim where prison officials have exercised their discretion in refusing to transfer a prisoner to a minimum security facility. Therefore, this claim should be **DISMISSED**.

**SO REPORTED AND RECOMMENDED** this 10TH day of **October, 2007.**

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | | |
|---|---|---|
| DANNY WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CV607-045 |
| | ) | |
| BILLY BROWN, | ) | |
| WAYNE JOHNSON, AND | ) | |
| BILLY TOMPKINS, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

After a careful de novo review of the record in this case, the Court concurs with the Magistrate Judge's Report and Recommendation, to which objections have been filed. Accordingly, the Report and Recommendation of the Magistrate Judge is adopted as the opinion of the Court.

**SO ORDERED** this _____ day of _____, 2007.

_____
B. AVANT EDENFIELD
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | |
|---|---|
| DANNY WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CV607-045 |
| | ) |
| BILLY BROWN, | ) |
| WAYNE JOHNSON, AND | ) |
| BILLY TOMPKINS, | ) |
| | ) |
| Defendants. | ) |

## ORDER

After a careful de novo review of the record in this case, the Court concurs with the Magistrate Judge's Report and Recommendation, to which no objections have been filed. Accordingly, the Report and Recommendation of the Magistrate Judge is adopted as the opinion of the Court.

**SO ORDERED** this \_\_\_\_ day of _____, 2007.

_____
B. AVANT EDENFIELD
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA